# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

CRYSTAL S.[1],
     Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 2:22-cv-508
Litkovitz, M.J.

**ORDER**

Plaintiff Crystal S. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for

judicial review of the final decision of the Commissioner of Social Security ("Commissioner")

denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental

security income ("SSI").  This matter is before the Court on plaintiff's Statement of Errors (Doc.

14) and the Commissioner's response in opposition (Doc. 18).

## I. Procedural Background

Plaintiff protectively filed her applications for DIB and SSI on October 10, 2019, alleging

disability since May 1, 2019, due to a back injury, osteoporosis, deteriorating and bulging disks,

a neck injury, headaches, tingling and numbness in arms, legs, and hands, Bipolar disorder,

short-term memory problems, and borderline adjustment disorder.  The applications were denied

initially and upon reconsideration.  Plaintiff, through counsel, requested and was granted a *de*

*novo* hearing before administrative law judge ("ALJ") William Leland.  Plaintiff, and a

vocational expert ("VE"), appeared telephonically and testified at the ALJ hearing on December

9, 2020.  On January 22, 2021, the ALJ issued a decision denying plaintiff's DIB and SSI

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

applications. (Tr. 12-30). This decision became the final decision of the Commissioner when the Appeals Council denied review on December 2, 2021.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The [plaintiff] has not engaged in substantial gainful activity since May 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: multilevel degenerative disc disease and facet joint osteoarthritis (lumbar), right carpal tunnel syndrome, fibromyalgia, urinary incontinence, depressive disorder, and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, [the ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently handle with the right; frequently finger with the right; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle; frequently be exposed to humidity and wetness and extreme cold; limited to performing simple, routine, and repetitive tasks, but not at a production rate pace (i.e. assembly line work); limited to simple work-related decisions in using her judgment and dealing with changes in the work setting; and able to frequently interact with supervisors, coworkers, and the public.

6.  The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7.  The [plaintiff] was born [in]. . . 1978 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The [plaintiff] has a limited education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from May 1, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-29).

**C.  Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[2] Plaintiff's past relevant work was a cashier checker, a semi-skilled, light position; and a home health aide, a semi-skilled, medium position.  (Tr. 28, 65).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as mail clerk (13,000 jobs nationally), cleaner, housekeeper (250,000 jobs nationally), and merchandise marker (150,000 jobs nationally).  (Tr. 28-29, 66-70).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

**D. Specific Errors**

On appeal, plaintiff alleges the ALJ erred by failing to (1) properly consider the impact of her urinary incontinence on her ability to work, (2) adequately account for limitations in concentration, persistence, or pace, and (3) properly evaluate her fibromyalgia and include accommodations in the residual functional capacity ("RFC") to account for this impairment. (Doc. 14). In response, the Commissioner argues the ALJ's decision is supported by substantial evidence, and the ALJ properly evaluated the medical evidence of record in formulating the RFC. (Doc. 18).

**1. The ALJ's RFC is supported by substantial evidence.**

In her first assignment of error, plaintiff alleges the ALJ's RFC is not supported by substantial evidence because it fails to properly consider the impact of her urinary incontinence

on her ability to work and does not adequately account for limitations in concentration, persistence, or pace.  (Doc. 14).  The Commissioner argues the ALJ's decision is supported by substantial evidence, and plaintiff failed to point to any specific evidence showing she is more limited than the ALJ's RFC finding.  (Doc. 18).

The RFC assessment is an evaluation of the most a claimant can still do despite her limitations.  20 C.F.R. § 404.1545(a)(1).[4]   The ALJ is vested with the responsibility for assessing a claimant's RFC based on the relevant medical and other evidence.  20 C.F.R. §§ 404.1545(a)(3), 404.1546(c).   "[T]he threshold for such evidentiary sufficiency is not high." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "[T]he decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."  *Id*. (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)).  The plaintiff "bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ."  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

### a.  Urinary Incontinence

Plaintiff argues the ALJ "failed to acknowledge that [plaintiff] may require additional unscheduled breaks and/or time off task, as a result of" her urinary incontinence.  (Doc. 14 at PAGEID 880).  Plaintiff alleges the "medical evidence consistently documents [] frequent urinary incontinence throughout the relevant period, with associated leakage if she coughs,

---

[4] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively."  *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)).  The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations for purposes of this Order.

sneezes, performs heavy lifting, and/or when she feels the urge." (*Id.*, citing Tr. 631, 765, 828). Plaintiff contends the ALJ "failed to acknowledge that [plaintiff] is likely to require additional break time, unscheduled breaks, and may require additional time off task, to manage her frequent restroom trips and potential accidents, resulting from her urinary incontinence." (*Id.* at PAGEID 881). Plaintiff also argues the ALJ erred by using "his lay opinion to determine that the only associated limitation resulting from [plaintiff's] urinary incontinence would be a weight restriction for lifting and carrying." (*Id.* at PAGEID 880, citing Tr. 26).

The Commissioner argues the ALJ properly evaluated plaintiff's urinary incontinence, and plaintiff failed to identify any medical opinions which indicated her impairment caused any functional limitations. (Doc. 18 at PAGEID 905-07).

In assessing how plaintiff's urinary incontinence impacted plaintiff's RFC, the ALJ discussed plaintiff's examinations with Dr. Roy Brown Jr. and the resulting treatment for this condition:

> The claimant presented for a urology evaluation with Roy Brown, Jr., MD on September 22, 2020 for a longstanding history of incontinence. She reported leakage of urine with coughing, sneezing, and heavy lifting. Upon examination, her abdomen was soft and nondistended. She had normal musculoskeletal range of motion, and a normal mood and affect. She was assessed with mixed incontinence for which Ditropan was prescribed (15F/15-30). On October 8, 2020, she had normal musculoskeletal range of motion and strength with no tenderness or swelling. Additionally, she was cooperative and had an appropriate mood and affect (14F/20-22). During the claimant's October 27, 2020 urology follow up, she reported a decrease in her symptoms and that she no longer required use of incontinence pads. Dr. Brown indicated that kidney, ureter, and bladder imaging from a few days prior was unremarkable. Her bladder was nonpalpable upon examination, and her gait was within normal limits. She had no gross limitations of range of motion, her judgment was normal, and her mood and affect were appropriate. The claimant opted to proceed with an urodynamic procedure (12F/6-7, 15F/1-14).

(Tr. 25). The ALJ also noted that plaintiff "reported improvement in her pain and urinary incontinence with treatment." (Tr. 26, citing Tr. 399-401, 473-76, 480-82, 611-14, 801-14). The

ALJ concluded, "To avoid exacerbating her back pain or to cause urinary incontinence, she should lift/carry no more than 20 pounds occasionally and 10 pounds frequently, stand/walk no more than six hours in an eight-hour workday, only occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds." (Tr. 26).

In arguing that the ALJ failed to properly account for her urinary incontinence, plaintiff cites to only three pages in the record as evidence that she has "associated leakage if she coughs, sneezes, performs heavy lifting, and/or when she feels the urge." (Doc. 14 at PAGEID 880, citing Tr. 631, 765, 828). Tr. 631 is an October 23, 2020 x-ray of plaintiff's abdomen which indicates, in the history section, that plaintiff has "mixed incontinence." (Tr. 631). Tr. 765 is an excerpt from an October 20, 2020 examination which showed plaintiff's diagnosis of mixed incontinence. (Tr. 765). Tr. 828 is a page from plaintiff's September 22, 2020 examination with Dr. Brown, where plaintiff told Dr. Brown she had leakage of her urine if she coughed, sneezed, engaged in heavy lifting, or when she felt the urge and sometimes sensory awareness. (Tr. 828).

Plaintiff, however, cites no objective medical evidence in the record to establish the functional limitations from urinary incontinence that she now alleges: additional break time, unscheduled breaks, and additional time off task to manage her frequent restroom trips and potential accidents. (Doc. 14 at PAGEID 881). *See Miller v. Comm'r of Soc. Sec.*, No. 3:20-cv-506, 2021 WL 4745430, at *4 (S.D. Ohio Oct. 12, 2021) (*Report and Recommendation*), *adopted*, 2021 WL 5003452 (S.D. Ohio Oct. 27, 2021) (finding the plaintiff's argument that the "RFC should have included the work-preclusive restrictions of being off task and absent from work due to her impairments" without merit because "none of the record evidence cited by Plaintiff actually demonstrate[ed] that her impairments would cause her to be off task twenty

8

percent of the time and miss two days of work a month"). *See also Wendy D. H. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-387, 2022 WL 621433, at *3 (S.D. Ohio Mar. 3, 2022).

Plaintiff points to no medical opinion evidence showing that her urinary incontinence results in any functional limitations. *See Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *8 (S.D. Ohio Aug. 26, 2020) ("Plaintiff has not pointed to any medical opinion evidence indicating that plaintiff's seizures were so frequent that he would be off task for fifteen percent of the workday or absent from work two days per month."). The ALJ thoroughly evaluated the medical evidence related to plaintiff's urinary incontinence and noted that plaintiff's condition improved with treatment, such that she no longer required use of incontinence pads. Contrary to plaintiff's argument that the ALJ used his own lay opinion in crafting relevant limitations, the ALJ reasonably imposed a weight restriction for lifting and carrying given plaintiff's report of urinary incontinence when she performs heavy lifting. (Tr. 26). Plaintiff has not carried her burden to show that the evidence before the ALJ required the inclusion of greater limitations than those the ALJ found. Significantly, plaintiff has failed to show how the ALJ's RFC is not supported by substantial evidence where the ALJ's RFC includes more limitations based on this impairment than the medical opinions of record. (*See* Tr. 27). Therefore, plaintiff's assignment of error concerning the ALJ's evaluation of her urinary incontinence is overruled.

### b. Limitations in Concentration, Persistence, or Pace

Plaintiff alleges the ALJ's RFC is not supported by substantial evidence because the ALJ failed to account for plaintiff's limitations in concentration, persistence, or pace. (Doc. 14 at PAGEID 882-84). Plaintiff also argues the ALJ failed to acknowledge that plaintiff "may be

unable to stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." (*Id.* at PAGEID 883).

The Commissioner argues the ALJ's RFC is supported by substantial evidence, and the ALJ properly evaluated plaintiff's ability to maintain concentration, persistence, or pace. (Doc. 18).

On December 23, 2019, Dr. Marc Miller completed a psychological evaluation on behalf of plaintiff. (Tr. 563-67). Dr. Miller opined that although plaintiff dropped out of school and had no GED, plaintiff was able to read and had no significant difficulties or limitations in the ability to understand, remember, or carry out one and two-step job instructions. (Tr. 566). Dr. Miller further opined plaintiff had no difficulties or limitations regarding interacting with co-workers, supervisors, or the public; she had "some difficulty due to anxiety" regarding her ability to maintain attention span and concentration; and she had "some difficulty" regarding her ability to deal with stress and pressure in a work setting. (*Id.*).

On January 13, 2020, state agency psychologist Dr. Carl Tishler completed a mental residual functional capacity assessment and opined plaintiff had no limitations concerning social interaction, sustained concentration or persistence, or understanding and memory limitations. (Tr. 79). Dr. Tishler opined plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting, but she had no limitations in the ability to be aware of normal hazards and take appropriate precautions, travel in unfamiliar placed or use public transportation, or set realistic goals or make plans independently of others. (Tr. 80). Dr. Tishler further opined plaintiff may have increased symptoms of depression and anxiety "with increased stress and pressure," but plaintiff had avoided inpatient stays for over fifteen years and was able to engage in activities of daily living "with minimal supports." (*Id.*). State agency psychologist

10

Dr. David Dietz reviewed plaintiff's file upon reconsideration on May 6, 2020, and affirmed Dr. Tishler's opinions.  (Tr. 106-07).

The ALJ found the opinions of the state agency psychologists "persuasive" because the opinions "support[] that functional limitations are warranted to account for her mental impairments."  (Tr. 27).  The ALJ also found the opinions from Dr. Miller to be "persuasive" because they "are consistent with the medical evidence and informed by program knowledge." (*Id.*).  The ALJ, however, found additional limitations were warranted.  The ALJ concluded:

> [A]dditional limitations are supported by more recent treatment and the claimant's subjective complaints, to include . . . difficulty with short-term recall, fair concentration, difficulty staying on topic, the need for redirection, impairment of insight and judgment, as well as an anxious/depressed mood (3F/1-21, 5F/28-34, 8F, 9F/13-15, 13F/15-30).  Nonetheless, greater limitations than those included in the residual functional capacity above are not supported by findings of a normal/appropriate mood and affect, appropriate grooming/hygiene, intact insight and judgment, the ability to recall three of three objects after five minutes, spell the word 'WORLD' in reverse, and follow two and three-step directions upon examination (3F/1-21, 5F/1-5, 5F/17-21, 5F/28-34, 8F, 9F/13-15, 12F/20-30, 12F/31-37, 12F/44-49, 14F/20-22, 14F/23-25, 14F/27-30, 14F/40-41).  Further, greater limitations are inconsistent with the claimant's reports that she had no limitations with personal care or work function, that she was mentally stable, that her depression was largely situational, and that her psychotropic medications worked well for her (11F/8-11, 12F/31-37, 13F/56-57, 13F/68-69).
>
> In sum, these findings are supported by the objective record and reports of the claimant's daily activities.  Therefore, when considering these findings in combination with the signs and symptoms caused by her severe impairments previously discussed, the undersigned [ALJ] finds that the claimant retained the ability to perform work with the limitations described in the residual functional capacity outlined above.

(Tr. 27-28).  After reviewing the medical evidence of record, the ALJ concluded:

> To account for impairment of short-term memory and concentration, she should perform no more than simple, routine, and repetitive tasks.  To avoid exacerbating her symptoms with stress and to account for impairment of insight and judgment, she should not perform work at a production rate pace (i.e. assembly line work) and she should be limited to simple work-related decisions in using her judgment and dealing with changes in the work setting.  Finally, due to her mood abnormalities

and reported irritability, she should have no more than frequent interaction with supervisors, coworkers, and the public.

(Tr. 26).

While plaintiff argues the "RFC is not an accurate representation of all the evidence of the record" (Doc. 14 at PAGEID 882), plaintiff has not shown the evidence before the ALJ required the inclusion of greater limitations than those found by the ALJ relating to concentration, persistence, or pace. With no citation to any medical evidence of record, plaintiff states the ALJ "failed to acknowledge that [plaintiff] may be unable to stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." (*Id*. at PAGEID 883). Plaintiff cites no evidence in support of this argument. Moreover, to the extent plaintiff argues the ALJ failed to adopt limitations or restrictions concerning concentration, persistence, or pace, the ALJ adopted more restrictive limitations than opined by Drs. Tishler, Dietz, and Miller. (*See* Tr. 27: "However, additional limitations are supported by more recent treatment and the claimant's subjective complaints, to include included difficulty with short-term recall, fair concentration, difficulty staying on topic, the need for redirection, impairment of insight and judgment, as well as an anxious/depressed mood."). It is well-established that "claimants are not prejudiced when an ALJ adopts a more restrictive RFC than an expert recommended." *Roberts v. Comm'r of Soc. Sec*., No. 3:22-cv-00051, 2023 WL 360984, at *16 (N.D. Ohio Jan. 23, 2023) (citing cases). The ALJ thoroughly evaluated the medical evidence of record and explained his reasons for including functional restrictions concerning concentration, persistence, or pace in the RFC. (*See* Tr. 21-27). Accordingly, the ALJ's RFC is supported by substantial evidence.

Within this assignment of error, and with no citation to any portion of the medical record, plaintiff also argues the hypothetical to the VE was "not adequate on the issues of concentration, persistence, and pace" because the ALJ failed to include restrictions concerning "repetition of

12

directions, only visual demonstration directions, or other aspects related to moderate concentration limitations. . . ." (Doc. 14 at PAGEID 883).

The ALJ did not err by failing to pose a hypothetical question to the VE that included the additional restrictions suggested by plaintiff. "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421-22 (6th Cir. 2014) (quoting *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). The ALJ's hypothetical questions incorporated all of the functional limitations the ALJ found to be credible, and plaintiff has not shown that the functional assessment was improper. *See id.* Plaintiff's first assignment of error is overruled.

### 2. The ALJ's evaluation of plaintiff's fibromyalgia is supported by substantial evidence.

In the second assignment of error, plaintiff alleges the ALJ "failed to properly evaluate [plaintiff's] fibromyalgia and her corresponding symptoms" in determining whether plaintiff met or equaled the Listings and assessing plaintiff's RFC. (Doc. 14 at PAGEID 884).

The Sixth Circuit requires an ALJ to "give due consideration to [a plaintiff's] diagnosis of severe fibromyalgia," and has "repeatedly recognized that fibromyalgia can be a severe and disabling impairment." *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 434 (6th Cir. 2013) (citing *Rogers*, 486 F.3d at 243) (in turn citing *Preston v. Sec'y of H.H.S.*, 854 F.2d 815, 820 (6th Cir. 1988) (per curiam)); *see also Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859-60 (6th Cir. 2011); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 778 (6th Cir. 2008) (per curiam)). Fibromyalgia "causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances." *Preston*, 854 F.2d at 817. "[D]isability claims related to fibromyalgia are related to the *symptoms* associated with the condition -

13

including complaints of pain, stiffness, fatigue, and inability to concentrate - rather than the underlying condition itself." *Kalmbach*, 409 F. App'x at 862 (emphasis in original) (citing *Rogers*, 486 F.3d at 247) (in turn citing 20 C.F.R. § 416.929); *Wyatt v. Sec'y of H.H.S*, 974 F.2d 680, 686 (6th Cir. 1992) (noting that subjective complaints of pain may support a claim for disability).

SSR 12-2p provides guidance on how the agency both develops evidence to establish that a person has a medically determinable impairment of fibromyalgia and evaluates fibromyalgia in disability claims. SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). SSR 12-2p describes fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." *Id*. SSR 12-2p explains that fibromyalgia is a "common syndrome" and that a person's symptoms must be considered when the agency decides if the individual has a medically determinable impairment of fibromyalgia. *Id*. "SSR 12-2p continues to require 'sufficient *objective evidence* to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity.'" *Clemow v. Comm'r of Soc. Se*c., No. 1:20-cv-592, 2021 WL 6125021, at *4 (S.D. Ohio Dec. 28, 2021) (emphasis in original) (quoting SSR 12-2p, 2012 WL 3104869, at *2).

### a. Fibromyalgia and the Listings

At step three of the sequential evaluation process, the claimant carries the burden to show she has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets all of the criteria of a listed impairment, she is disabled; otherwise, the evaluation proceeds to step four. 20 C.F.R.

§ 404.1520(d)-(e); *see also Rabbers*, 582 F.3d at 653 ("A claimant must satisfy all of the criteria to meet the listing.").

There is no listing for fibromyalgia because it "is not a listed impairment." SSR 12-2p, 2012 WL 3104869, at *6. SSR 12-2p, however, instructs the ALJ to consider whether fibromyalgia "medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment." *Id*.

In evaluating whether a claimant meets or equals a listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec*., 424 F. App'x 411, 416 (6th Cir. 2011). Otherwise, "it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id*. (citations omitted). The ALJ "need not discuss listings that the [claimant] clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks v. Comm'r of Soc. Sec*., 544 F. App'x 639, 641 (6th Cir. 2013). "If, however, the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Id*. at 641 (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)); *see also Reynolds*, 424 F. App'x at 415-16 (holding the ALJ erred by not conducting any step three evaluation of the claimant's physical impairments, when the ALJ found the claimant had the severe impairment of back pain).

"A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether [s]he satisfied a listing." *Smith-Johnson v. Comm'r of Soc. Sec*., 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks*, 544 F. App'x at

641-42).  "Rather, the claimant must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing."  *Id*. (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

Plaintiff contends the ALJ erred at step three of the sequential evaluation process by finding her severe impairment of fibromyalgia did not meet or equal Listing 14.09.  (Doc. 14 at PAGEID 886).  Plaintiff argues that "the ALJ erroneously disregarded the substantiated evidence of the record and stated that the record 'contains no evidence' to support a finding that [plaintiff's] fibromyalgia meets or equals a Listing, specifically Listing 14.09."  (*Id*., citing Tr. 19-20).  Plaintiff contends "the record consistently documents [her] constitutional symptoms of fibromyalgia."  (Doc. 14 at PAGEID 886).  She argues the ALJ inaccurately found "no evidence" to support Listing 14.09 given plaintiff's documented symptoms of fibromyalgia throughout the record.  (*Id*. at PAGEID 887, citing Tr. 59, 62-64, 404, 466-468, 484, 488-490, 500, 664, 765, 791, 828).

The ALJ expressly evaluated plaintiff's fibromyalgia under Listing 14.09.  The ALJ concluded:

> While it does not have a specific listing under the Regulations, the undersigned [ALJ] considered the claimant's fibromyalgia under SSR 12-2p and listing 14.09 (inflammatory arthritis) and finds that while it met the outlined criteria to determine whether it was a severe impairment, it does not meet or medically equal a listing. As discussed in more detail below, the record contains no evidence that persistent inflammation or deformity of a weight-bearing joint has resulted in the claimant's inability to ambulate effectively, as defined in 14.00(C)(6).  Nor does the record demonstrate persistent inflammation or deformity of a major peripheral joint in the upper extremity resulting in the inability to effectively perform fine and gross movements.  The record lacks evidence of inflammation or deformity of one or more major peripheral joint that involves two or more organs/body systems, of which one has at least a moderate level of severity.  Further, the record contains no evidence of ankylosing spondylitis, other spondyloarthropathies, or repeated manifestations of inflammatory arthritis.

(Tr. 19).

16

The ALJ analyzed Listing 14.09 for "inflammatory arthritis" under sections A, B, C, and D of the Listing. The ALJ found no evidence of persistent inflammation or deformity of (1) a weight-bearing joint resulting in plaintiff's inability to ambulate effectively or (2) a major peripheral joint in the upper extremity resulting in the inability to effectively perform fine and gross movements (Listing 14.09A), and plaintiff does not cite to any evidence calling this conclusion into question. The ALJ also found no evidence of inflammation or deformity of one or more major peripheral joint that involves two or more organs/body systems, of which one has at least a moderate level of severity (Listing 14.09B), and plaintiff fails to cite any evidence to the contrary. The ALJ further found no evidence of ankylosing spondylitis or other spondyloarthropathies (Listing 14.09C), nor has plaintiff cited to any such evidence. Finally, the ALJ found no evidence of repeated manifestations of inflammatory arthritis (Listing 14.09D), which also requires at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and marked limitation in (1) activities of daily living, (2) maintaining social functioning, or (3) completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. While plaintiff cites to her diagnoses of fibromyalgia; chronic fatigue; co-occurring conditions of depression and anxiety; headaches/migraines throughout her medical record; tender points throughout her body; abdominal pain and IBS; symptoms of memory loss and lack of concentration; urinary incontinence; numbness, tingling, stiffness; poor motivation and low energy level (Doc. 14 at PAGEID 887), she does not explain how any of these symptoms or findings raise a substantial question as to whether she could qualify as disabled under Listing 14.09. *Sheeks*, 544 F. App'x at 641. Plaintiff does not identify any other evidence that would cast doubt on the ALJ's Listings finding. Therefore, plaintiff has failed to carry her burden to demonstrate her fibromyalgia could meet or medically equal Listing

17

14.09(D).  *Rabbers*, 582 F.3d at 653.  For these reasons, the Court finds the ALJ's step three finding is supported by substantial evidence.

> ### b.   Fibromyalgia and the RFC finding

Plaintiff also argues the ALJ's RFC fails to take into account her fibromyalgia.  Plaintiff contends, with no citation to any portion of the medical record, that the ALJ failed to "include accommodations in the residual functional capacity determination for [plaintiff's] chronic pain and to consider her resulting inability to perform substantial gainful activity on a sustained basis, without additional absences and time off task."  (Doc. 14 at PAGEID 886).

As discussed in connection with her first assignment of error, plaintiff fails to cite to any medical opinion evidence documenting the need for "additional absences and time off task" as a result of her fibromyalgia.  The ALJ thoroughly examined the medical record relating to plaintiff's fibromyalgia (Tr. 21-27) and included limitations and restrictions to account for the "widespread pain associated with her fibromyalgia[.]"  (Tr. 27).  The ALJ concluded:

> To avoid exacerbating her back pain or to cause urinary incontinence, she should lift/carry no more than 20 pounds occasionally and 10 pounds frequently, stand/walk no more than six hours in an eight-hour workday, only occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds.  Due to gait abnormalities and possible medication side effects, she should only occasionally balance and have no exposure to unprotected heights, moving mechanical parts, or operate a motor vehicle.  To avoid exacerbating her widespread pain and to account for loss of musculoskeletal range of motion, she should only occasionally stoop, kneel, crouch, and crawl, and have no more than frequent exposure to humidity, wetness, and extreme cold.  Due to evidence of right carpal tunnel syndrome, she should perform no more than frequent handling or fingering on the right.

(Tr. 26; *see also* Tr. 27: "additional limitations . . . were added to be consistent with the claimant's more recent treatment and subjective complaints, to include evidence of . . . widespread pain associated with her fibromyalgia. . . .").

Plaintiff has not cited any medical evidence the ALJ failed to consider or which casts doubt on the ALJ's RFC finding.  Nor has plaintiff shown that the evidence of plaintiff's fibromyalgia required the inclusion of greater limitations than those found by the ALJ. Therefore, plaintiff's second assignment of error is overruled.

## III.  Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 14) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED**.  **IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 2/27/2023

Karen L. Litkovitz
Chief United States Magistrate Judge